UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PIERRE CONNER,

        Plaintiff,

v.                                                  Case No. 15-C-11

MARCO SALAAM,
SHALONDA TARVER,
DAVID CHAVEZ, and
STEVEN CABALLERO,

        Defendants.

## DECISION AND ORDER

Plaintiff Pierre Conner sued Detectives Marco Salaam, Shalonda Tarver, David Chavez, and Steven Caballero of the City of Milwaukee Police Department under 42 U.S.C. § 1983 for allegedly violating his constitutional rights. Specifically, Conner alleges his Fifth Amendment rights were violated when he made incriminating statements during an interrogation after he unequivocally asked for counsel. Before me now are Conner's motion for leave to file a second amended complaint and the defendants' motion for summary judgment. For the reasons that follow, Conner's motion will be denied, and the defendants' motion will be granted.

## UNCONTROVERTED FACTS

The following facts are taken from the defendants' proposed findings of fact. (Defs.' Proposed Findings of Fact (DPFOF), ECF No. 41.) Because Conner did not dispute the defendants' proposed findings, the court deems them admitted. See Civil L.R. 56(b)(4) ("The Court will deem

uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment.").

On April 2 and 3, 2009, detectives of the Milwaukee Police Department interrogated Conner regarding the death of Shavanty Jackson, who was killed during an attempted armed robbery. This case arises out of those interrogations.

The interrogations began the evening of April 2, 2009 by Detectives Marco Salaam and Shalonda Tarver. (DPFOF at ¶ 8.) During the interrogation, Conner requested an attorney three times within a span of less than ten minutes. After his third request for an attorney, the questioning stopped and the detectives returned Conner to his jail cell. (*Id.* at ¶ 9.) Conner did not make any incriminating statements during this interrogation. (*Id.* at ¶ 8.) Early on April 3, 2009, Detective Salaam told Detective Chavez that Conner was willing to talk again, even though Conner never made a call to officers to reinitiate the conversation. (*Id.* at ¶ 10.) Detective Chavez brought Conner into an interrogation room and questioned him. (*Id.* at ¶ 11.) Detective Caballero also took part in Conner's interrogation that day. During this interrogation, Conner confessed to his involvement in the incident that caused Jackson's death. (*Id.*)

On April 3, 2009, Conner was charged with felony murder contrary to Wis. Stat. § 940.03 in causing Jackson's death while attempting to commit the crime of armed robbery party to a crime. (*Id.* at ¶ 12.) The criminal complaint, filed on April 4, 2009, included the following factual allegations: (1) the Milwaukee Police Department's discovery of Jackson's body on March 25, 2009 and confirmation that Jackson died from a gunshot wound; (2) statements from an adult eye witness, Emerson Allen, who was at the residence when the incident occurred; (3) statements from a second adult eye witness, Robert Nash, who observed Conner and Charles Johnson approach Jackson's

2

residence and subsequently flee from the residence after Nash heard a gunshot; and (4) Conner's confession to Detective Chavez. (*Id.* at ¶ 13; ECF No. 40-1.)

After his arrest, Conner made an initial appearance on April 4, 2009. (ECF No. 40-3 at 21.) A cash bond was set based upon the probable cause statement submitted by Detective Charles Mueller. (ECF No. 40-2.) The probable cause statement and the state court commissioner's determination of bail included (1) Nash's recounting of the events; (2) a recounting of a statement from a confidential informant who overheard Conner confess to his aunt and uncle; (3) a statement from Conner's uncle indicating Conner messed up and began crying; and (4) Conner's confession. (DPFOF at ¶ 7; ECF No. 40-2.) Conner subsequently waived his preliminary hearing. (DPFOF at ¶ 14.)

On July 14, 2009, Conner filed a motion to suppress his inculpatory statement. (*Id.* at ¶ 15; ECF No. 40-3.) The trial court denied the motion, concluding that Conner had never made an unequivocal request for an attorney during the interrogation. (DPFOF at ¶ 15.) Conner subsequently pled guilty to a reduced charge of attempted armed robbery with the use of force as a party to a crime contrary to Wis. Stats. §§ 943.32(1)(a) and 939.05. He was sentenced to six years in prison. (*Id.* at ¶ 16.)

Conner appealed the judgment to the Wisconsin Court of Appeals, claiming that the statements he made to the detectives during his interrogation should have been suppressed because he unequivocally requested counsel. *State v. Conner*, 2012 WI App 105, ¶ 1, 344 Wis. 2d 233, 821 N.W.2d 267. The Court of Appeals agreed and reversed the conviction, finding that "the trial court erred as a matter of law in denying Conner's motion to suppress." *Id.* Despite the reversal, on remand Conner again pled guilty to the same charge of attempted armed robbery with the use of

3

force as a party to a crime in return for a sentencing recommendation from the State for time served. (DPFOF at ¶ 18.) He was given a reduced sentence of 47 months of initial confinement, with credit for time served of 46 months and 13 days, and 47 months of extended supervision. (*Id.*) Conner then brought this § 1983 action seeking damages for the 47 months he was in prison. (Am. Compl., ECF No. 33.)

## ANALYSIS

**1. Plaintiff's Motion to File a Second Amended Complaint**

Conner's original pro se complaint, filed on January 5, 2015, alleged a violation of his right to have an attorney provided during a custodial interrogation after he requested such assistance. Though he referred to his claim as a violation of his Sixth Amendment right to counsel, the Court in its screening order allowing the case to proceed characterized his claim as a violation of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). In *Miranda*, the Supreme Court held that this right, along with the rights and warnings that have become synonymous with the lead petitioner's name, are essential safeguards to the Fifth Amendment right against self-incrimination which applies to the states through the Fourteenth. *Id.* at 478–79. On July 2, 2015, the Court granted Conner's motion for appointment of counsel. More than a year later, on July 25, 2016, Conner, now represented by counsel, filed a first amended complaint again alleging a violation of his Sixth Amendment right to counsel and naming two additional defendants who had been referred to as Detectives 4 and 5 in the original complaint. The amended complaint also clarified that in addition to compensation for loss of liberty for his four years in prison, Conner was also seeking damages for pain and suffering, punitive damages, and an award of attorneys fees.

4

On December 19, 2016, more than two months after the defendants' motion for summary judgment was fully briefed and almost two years after the case was commenced, Conner filed a motion for leave to file a second amended complaint. The second amended complaint replaces the Sixth Amendment claim with a Fifth Amendment/*Miranda* claim and adds a claim that the defendants conspired to coerce Conner's confession in violation of the Due Process Clause of the Fourteenth Amendment. The relief requested is virtually the same as in the amended complaint. (ECF No. 54-1, at 7.) The defendants oppose the motion on the ground that it is not timely and will cause undue delay.

Pursuant to the Federal Rules of Civil Procedure, if a party is unable to amend his pleading as a matter of course, he may amend with "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although the rules provide that a court should freely give leave to amend "when justice so requires," leave to amend is not to be automatically granted. *Id.*; *see also Johnson v. Methodist Med. Ctr. of Ill.*, 10 F.3d 1300, 1303 (7th Cir. 2004). Courts recognize that "[t]here must be a point at which a plaintiff makes a commitment to the theory of his case." *Id.* at 1304. The court has broad discretion to deny leave to file an amended pleading when there is "undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)). The longer the delay, "the greater the presumption against granting leave to amend." *Johnson v. Cypress Hill*, 641 F.3d 867 (7th Cir. 2011) (quoting *King v. Cooke*, 26 F.3d 720, 723 (7th Cir. 1994)).

Here, Conner seeks to pursue a new theory of liability nearly two months after the defendants' motion for summary judgment on the sole claim of his first amended complaint was fully

5

briefed and well over a year after counsel was appointed. The defendants argue that it is too late for Conner to file a second amended complaint because there is no newly discovered evidence. Based on the factual allegations contained in the proposed complaint, it is clear that Conner was aware of the facts alleged in support of his new claim from the outset of this litigation. What is not clear is what Conner seeks to gain from the proposed amendment.

It is not necessary to amend the complaint to state that Conner's claim arises under *Miranda*'s interpretation of the Fifth Amendment, as opposed to the Sixth Amendment. Plaintiffs need only plead facts, not legal theories, in their complaints. *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 742 (7th Cir. 2010). As their brief in support of their motion for summary judgment shows, the defendants understood that Conner's claim actually arose under the Fifth Amendment, not the Sixth. The concern is the due process claim. What the new due process claim adds to the *Miranda* claim that is not already in the case is not apparent. What is clear is that it would require additional discovery and legal research to address the new claim.

In any event, Conner has failed to demonstrate good cause for the delay and extra time and expense the defendants would be required to incur if the due process claim were added at this point. Plaintiff had ample time to cure the defects in his complaint by moving to amend at an earlier date. He offers no explanation or justification for his delay in filing his motion for leave to amend. This is precisely the type of delay and prejudice that district courts have been directed to prevent. *See Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) ("Eleventh hour additions . . . [are] bound to produce delays that burden not only the parties to the litigation but also the judicial system and other litigants." (quoting *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992))). Because the

defendants would be prejudiced by an amendment at this stage of the proceedings, the motion for leave to file a second amended complaint is denied.

**2. Defendants' Motion for Summary Judgment**

The defendants moved for summary judgment, arguing that Conner cannot maintain a Fifth Amendment claim because the incriminating statements he made to the defendants were not indispensable to his criminal proceedings and, alternatively, that the defendants are entitled to qualified immunity from any Fifth Amendment violation. For the reasons below, I find that Conner has not established that the violation of his *Miranda* rights is actionable under § 1983. I therefore decline to address the defendants' alternative arguments.

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

The defendants argue that Conner cannot maintain a Fifth Amendment claim because the incriminating statements he made were not indispensable to his criminal proceedings. In support of

7

their argument, the defendants rely upon a line of cases decided by the Supreme Court and the Seventh Circuit that address when an individual has an actionable § 1983 claim for violations of his *Miranda* rights. *See Chavez v. Martinez*, 538 U.S. 760 (2003) (plurality opinion); *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006 (7th Cir. 2006); *Aleman v. Vill. of Hanover Park*, 662 F.3d 897 (7th Cir. 2011). In *Chavez*, while Martinez was being treated for gunshot wounds he received from an altercation with police, Officer Chavez questioned him without first giving *Miranda* warnings. 538 U.S. at 764. During the interrogation, Martinez admitted that he used heroin and had taken an officer's gun which provoked the altercation. *Id.* Although Martinez was never prosecuted based on this incident, he filed a § 1983 claim against Officer Chavez, alleging that Officer Chavez violated his Fifth Amendment right to be free from self-incrimination and his Fourteenth Amendment substantive due process right to be free from coercive questioning. *Id.* at 765.

In a plurality opinion, the Supreme Court held that Officer Chavez's interrogation without *Miranda* warnings did not violate the Self-Incrimination Clause of the Fifth Amendment because Martinez's incriminating statements were not used against him in a criminal case. *Id.* at 767. The plurality began its analysis by looking at the text of the Fifth Amendment: "No person . . . shall be compelled *in any criminal case* to be a *witness* against himself." *Id.* at 766 (quoting U.S. Const. amend. V (emphasis in original)). It rejected Martinez's argument that the meaning of "criminal case" encompasses the entire investigatory process, including interrogations. *Id.* The plurality reasoned that the phrase "criminal case," as it is used in the Self-Incrimination Clause, "at the very least requires the initiation of legal proceedings." *Id.* Although the Court did not decide the precise moment when a criminal case commences, it determined that police questioning does not constitute a case. *Id.* at 767. The plurality concluded that "[s]tatements compelled by police interrogations

of course may not be used against a defendant at trial . . . but it is not until their use in a criminal case that a violation of the Self-Interrogation Clause occurs." *Id.*

The Seventh Circuit addressed the precise moment a criminal case commences in *Sornberger*. Plaintiffs, Scott and Teresa Sornberger, brought a civil rights action, pursuant to § 1983, alleging that they had been arrested without probable cause in violation of the Fourth Amendment and that Teresa had been coerced into confessing in violation of her Fifth and Fourteenth Amendment rights. *Sornberger*, 434 F.3d at 1009–10. Teresa claimed that during a police interrogation, she was "psychologically coerced" into admitting she assisted her husband in robbing a bank and that she orally confessed without receiving *Miranda* warnings. *Id.* at 1011. Based on Teresa's incriminating statement, the State of Illinois instituted criminal proceedings against the Sornbergers for the bank robbery. *Id.* at 1012. Teresa's un-warned confession was used at the probable cause hearing, bail hearing, and arraignment hearing. *Id.* at 1026. After four months in jail awaiting their trial, the State dropped their charges after an FBI facial comparison revealed physical differences between Scott and the bank robber that eliminated Scott as a suspect. *Id.* at 1009.

The Seventh Circuit concluded that even though the charges against Teresa were eventually dismissed, "her unwarned statements were used against her in a 'criminal case' and in a manner that implicates the Self-Incrimination Clause." *Id.* at 1026. The court observed that Teresa's "criminal case" advanced farther than Martinez's in *Chavez* where criminal proceedings were never initiated at all. *Id.* at 1025. Relying solely on Teresa's statement, police were able to "develop probable cause sufficient to charge her and initiate a criminal prosecution." *Id.* at 1025. The court held that "where . . . a suspect's criminal prosecution was not only initiated, but was commenced *because* of her allegedly un-warned confession, the 'criminal case' contemplated by the Self-Incrimination

9

Clause has begun." *Id.* at 1026–27. In sum, the court concluded that the use of an un-warned confession in a criminal proceeding allows a suit for damages under § 1983. *Id.* at 1027.

In *Aleman*, the plaintiff, Aleman, also asserted a § 1983 claim, alleging that his interrogation regarding the death of a baby at his daycare violated his *Miranda* rights. 662 F.3d at 900. Aleman requested the assistance of counsel twice during the interrogation. *Id.* Notwithstanding his request, the officers continued to question Aleman and had him sign a *Miranda* waiver. During the four-hour interrogation, Aleman confessed to violently shaking the baby and causing his injuries. *Id.* at 902. Based on this confession, Aleman was charged with first-degree murder. *Id.* Nevertheless, more than a year after his arrest and the baby's death, the charges against him were dismissed. *Id.* at 903. The court determined the officers violated Aleman's *Miranda* rights because they continued to question him after he requested counsel twice. *Id.* at 905. It held that Aleman had an actionable suit under § 1983 for the violation of his *Miranda* rights because Aleman's statement was used against him in a criminal proceeding as it was "an indispensable ground of his indictment for murder." *Id.* at 905–06. As such, his Fifth Amendment right against self-incrimination was violated. *Id.*

Taken together, these cases suggest that a violation of *Miranda* is actionable in a suit under § 1983 when the incriminating statement is indispensable to an individual's criminal proceeding. Here, Conner has not established that the criminal prosecution was commenced because of his confession. Although the probable cause statement, the criminal complaint, and the bail determination referenced Conner's incriminating statement, the confession on its own was not indispensable to the criminal proceeding. The probable cause statement and the criminal complaint contained additional items of evidence, including statements from an eye witness who observed Conner and another individual approach Jackson's residence and subsequently flee after he heard a

gunshot. (DPFOF at ¶¶ 7, 13.) Other pieces of evidence relied upon during the course of Conner's criminal proceeding contained statements from a second eye witness who was at the residence when the incident occurred, a statement from a confidential informant who overheard Conner confess to his aunt and uncle, and a statement from Conner's uncle. (*Id.*) While Conner's confession contributed to the initiation of criminal proceedings, it certainly was not indispensable.

Moreover, after the Wisconsin Court of Appeals reversed Conner's conviction and remanded the case, the State decided to prosecute Conner without the incriminating statement. Instead of going to trial, Conner again pled guilty to the same charge and was sentenced to time served. (*Id.* at ¶ 18.) Conner argues that he took the plea deal because he chose to go home rather than fight for his innocence from jail. (Pl.'s Br. at 9, ECF No. 49.) Yet, Conner's reasons for pleading to this charge are irrelevant. As a matter of law, his conviction for attempted armed robbery stands, and he is not entitled to compensation for the time he spent in prison serving the sentence for that crime. "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). While Conner's original conviction was overturned on appeal, that was not the end of his case. His guilty plea to the same crime on remand and sentence to time served constitutes an admission that his conviction and sentence were lawful. The fact that he accepted the state's offer of time served also shows that his statement was not indispensable to his conviction.

In short, because Conner's confession was not indispensable to his conviction and because he pled guilty to the same charge and was sentenced to time served on remand, his case must be dismissed. He has not established that the violation of his *Miranda* rights is actionable under § 1983. Accordingly, Defendants are entitled to summary judgment as to Conner's Fifth Amendment claim.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for leave to file a second amended complaint (ECF No. 54) is **DENIED** and Defendants' motion for summary judgment (ECF No. 38) is **GRANTED**. The Clerk is directed to enter judgment against Conner and in favor of Defendants dismissing the case.

**SO ORDERED** at Green Bay, Wisconsin this  27th  day of January, 2017.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court